DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**FALLANG FAMILY LIMITED PARTNERSHIP,** individually and as
assignee of **HADELAND LIMITED PARTNERSHIP,**
Appellant,

v.

**PRIVCAP COMPANIES, LLC, PRIVCAP FUNDING, LLC, PRIVCAP
HOLDINGS, LLC, PRIVCAP MANAGER, LLC,** and **DANIEL COHEN,**
Appellees.

No. 4D20-548

[March 24, 2021]

Appeal of nonfinal order from the Circuit Court for the Fifteenth
Judicial Circuit, Palm Beach County; James L. Martz, Judge; L.T. Case
No. 50-2018-CA-008888-XXXX-MB.

Jason Goldstein and Maria Piva of Goldstein & Company, Coral Gables,
for appellant.

Douglas S. Allison and Steven K. Platzek of Graner Platzek & Allison,
P.A., Boca Raton, for appellees.

CONNER, J.

Fallang Family Limited Partnership ("FFLP"), the plaintiff below,
appeals a nonfinal order granting without prejudice the motion to compel
arbitration and stay proceedings filed by Privcap Companies, LLC, Privcap
Holdings, LLC, Privcap Funding, LLC, Privcap Manager, LLC, and Daniel
Cohen (collectively "the Privcap Appellees") in a suit in which the Privcap
Appellees are defendants, along with multiple other defendants. FFLP
makes multiple arguments as to how the trial court erred, contending that
none of the sixteen counts against the Privcap Appellees are subject to
arbitration. We affirm without discussion all of the trial court's rulings,
except the issue raised as to whether reference to the American Arbitration
Association ("AAA") rules in an arbitration agreement can be sufficient to
shift the authority to decide what disputes are arbitrable from the trial
court to the arbitrator or arbitration panel. We also explain the limits of
our opinion in *Younessi v. Recovery Racing, LLC*, 88 So. 3d 364 (Fla. 4th
DCA 2012).

*Background*

In the underlying action, FFLP brought a twenty-two count complaint against the Privcap Appellees and other defendants. FFLP was an investor client of one or more of the Privcap Appellees. The Privcap Appellees hold themselves out as real estate investors, managers, and professionals. The Privcap Appellees are in the business of identifying, securing, and selling real estate investment opportunities to the public. All of the claims addressed in the rulings under review are against one or more of the Privcap Appellees, and the claims revolve around alleged breaches of two separate arrangements: (1) an equity investment; and (2) a separate loan made by FFLP to or through one or more of the Privcap Appellees. The two arrangements were in connection with the acquisition and management of a real estate portfolio consisting of various properties in Ohio ("Ohio Properties").

According to FFLP's complaint, the Privcap Appellees' collective mission is to secure real estate investment opportunities for its clients. Appellee Daniel Cohen is the president and chief executive officer of the Privcap entities. The complaint alleges that Cohen holds himself out to be an expert on real estate investments, loans, and property management. FFLP claimed that all the Privcap entities are entirely governed and controlled by Cohen and the entities exercise no independence or discretion.

*The Operating Agreement*

The Operating Agreement was between FFLP and Privcap Holdings and no other persons or entities. Under the Operating Agreement, Privcap Holdings was to create a separate entity to use FFLP's investment funds for purchasing and managing the Ohio Properties for "profit, income, and gain." The Operating Agreement contained the following single paragraph arbitration provision:

> **12.10 Arbitration.** In the event of any dispute under this agreement the parties agree to submit to binding arbitration in the state of Florida with a panel of one arbitrator. The arbitrator shall be chosen by the AAA and the AAA rules and procedure shall apply, and the arbitration will be governed by the law of the state of Florida.

*The Servicing Agreement*

2

Almost a year before FFLP entered into the Operating Agreement, FFLP and Privcap Funding entered into the Servicing Agreement. The Servicing Agreement was intended to govern multiple secured loans FFLP made to third parties through Privcap Funding. Under the Servicing Agreement, Privcap Funding was responsible for servicing, administering, and managing the secured loan opportunities Privcap Funding procured for FFLP. One of the loans covered by the agreement was a one-million-dollar loan FFLP made through Privcap Funding to certain other defendants in connection with the acquisition of the Ohio Properties. The Servicing Agreement did not contain an arbitration clause.

*Allegations of Fraud and Wrongdoing Against the Privcap Appellees*

Sixteen of the twenty-two counts of the complaint were against one or more of the Privcap Appellees (the remaining counts were against other defendants). As to the Privcap Appellees, FFLP alleged it discovered that they had made multiple misrepresentations to FFLP in an effort to induce FFLP to transfer its funds to one or more of the Privcap Appellees for specific purposes that were never fulfilled. FFLP also discovered that one or more of the Privcap Appellees and other defendants improperly managed the investments and loans made by FFLP and entered into mortgages using FFLP's funds—all while securing interests in favor of one or more of the Privcap Appellees. FFLP alleged that the Privcap Appellees' actions and inactions rose to the level of fraud and negligence, including breaches of their duties under common law and various statutes.

*The Motions to Compel Arbitration and Stay*

In response to the complaint, the Privcap Appellees filed a motion to compel arbitration and stay portions of the proceedings. The appellees claimed, "[a]lthough [FFLP] has attempted to bring as many causes of action against as many Defendants as it could come up with, the underlying investments are governed by or relate to an Operating Agreement . . . which contains a clause **requiring** [FFLP] to arbitrate its claims rather than bringing litigation."

After a hearing, the court found that fourteen of the sixteen counts against the Privcap Appellees were arbitrable because "they are either wholly related to the Operating Agreement or tangentially related to the Operating Agreement through the Servicing Agreement between [FFLP] and Privcap Funding." The trial court made its findings "without prejudice to the arbitrator to make determinations as to which claims are arbitrable based on a more detailed factual presentation by the Parties as to why some of those counts listed in . . . this Order may not be related to the

arbitration clause of the Operating Agreement."  The trial court stayed all remaining claims it determined were not subject to arbitration.  The stay was imposed until the conclusion of arbitration.

FFLP gave notice of this nonfinal appeal.

*Appellate Analysis*

Generally, review of an order on a motion to compel arbitration is de novo.  *Hernandez v. Crespo*, 211 So. 3d 19, 24 (Fla. 2016); *Wilson v. AmeriLife of E. Pasco, LLC*, 270 So. 3d 542, 545 (Fla. 2d DCA 2019).  Issues of contract interpretation are also subject to de novo review.  *Fla. Inv. Grp. 100, LLC v. Lafont*, 271 So. 3d 1, 4 (Fla. 4th DCA 2019).  If there is a dispute over what issues or controversies are within the scope of an arbitration agreement, courts will generally resolve the dispute "in favor of arbitration."  *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013).

"Arbitration provisions are creatures of contract and must be construed 'as a matter of contract interpretation.'"  *Doe v. Natt*, 299 So. 3d 599, 605 (Fla. 2d DCA 2020) (quoting *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999)).  "'When interpreting a contract, the court must first examine the plain language of the contract for evidence of the parties' intent.' . . . 'Intent unexpressed will be unavailing. . . .'"  *Beach Towing Servs., Inc. v. Sunset Land Assocs., LLC*, 278 So. 3d 857, 860 (Fla. 3d DCA 2019) (first quoting *Perez-Gurri Corp. v. McLeod*, 238 So. 3d 347, 350 (Fla. 3d DCA 2017); and then quoting *Moore v. Stevens*, 106 So. 901, 903 (Fla. 1925)).

The Supreme Court of the United States has noted that "who—court or arbitrator—has the primary authority to decide whether a party has agreed to arbitrate can make a critical difference to a party resisting arbitration."  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).  The Court has explained:

> This Court, however, has (as we just said) added an important qualification, applicable when courts decide whether a party has agreed that arbitrators should decide arbitrability: *Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so.*  In this manner the law treats silence or *ambiguity* about the question 'who (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question 'whether a particular

4

merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement'—*for in respect to this latter question the law reverses the presumption.*

. . . .

On the other hand, the former question—the 'who (primarily) should decide arbitrability' question—is rather arcane. *A party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers.* And, given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, *one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.*

*Id.* at 944–45 (first and second alteration in original) (emphases added) (citations omitted). The Court recently reaffirmed these principles in *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524 (2019), when it cited *First Options* for the proposition: "This Court has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Id.* at 530 (quoting *First Options*, 514 U.S. at 944). Applying the Federal Arbitration Act to the context of an arbitration agreement, the Court in *Henry Schein* said: "We must interpret the Act as written, and the Act in turn requires that we interpret the contract as written. When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Id.* at 529.

Although there is scant discussion in the briefs by the parties in this case, we note that section 682.02, Florida Statutes (2018), contains "gatekeeper" provisions allocating arbitrability issues between court and arbitrator:

(1) *An agreement* contained in a record *to submit to arbitration any existing or subsequent controversy* arising between the parties to the agreement *is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract.*

5

(2) *The court shall decide whether* an agreement to arbitrate exists or *a controversy is subject to an agreement to arbitrate.*

(3) *An arbitrator shall decide* whether a condition precedent to arbitrability has been fulfilled and *whether a contract containing a valid agreement to arbitrate is enforceable.*

§ 682.02, Fla. Stat. (emphases added). Thus, by statute in Florida, the court decides what controversies are subject to an arbitration agreement, however, *by contract,* the parties can shift that authority to the arbitrator. *Id.* What *First Options* and *Henry Schein* make clear is that the contract language shifting the authority to decide what controversies are arbitrable from the court to the arbitrator must provide "clear and unmistakable evidence" of that intent, and ambiguity as to "who decides" reverses the usual presumption from the arbitrator to the court. *Henry Schein,* 139 S. Ct. at 530; *First Options,* 514 U.S. at 944–45. Stated another way, if the contract language is ambiguous, the normal presumption that favors decision making by the arbitrator is reversed, and the presumption becomes that the court decides what controversies are subject to arbitration. In sum, ambiguous contractual language does not change the statutory mandate that courts decide what controversies are subject to arbitration.

In this case, the arbitration agreement in the Operating Agreement is one paragraph. Notably, the agreement makes reference to "AAA" and "AAA rules and procedure." Importantly, the Operating Agreement did not attach any portions of the AAA rules or explain where those rules could be found. Nor did the arbitration paragraph identify which subject-area version of the AAA rules apply. The Privcap Appellees contend the AAA Commercial Arbitration Rules are applicable to this case, and in particular rule R-7. Jurisdiction, which provides:

(a) *The arbitrator shall have the power to rule on his or her own jurisdiction, including* any objections with respect to the existence, *scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.*

(b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. *Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.*

6

Am. Arb. Ass'n, *Commercial Arbitration Rules and Mediation Procedures*, 13 (Oct. 1, 2013) http://www.adr.org/sites/default/files/Commercial-Rules-Web.pdf (emphases added).  As can be seen, AAA Commercial Arbitration Rule R-7. gives the arbitrator the authority to decide what issues and controversies are within the scope of the arbitration agreement, an authority the arbitrator would not have directly under section 682.02(2).

However, similar to *Natt*, the issue we confront in this case is whether contract language incorporating a set of arbitration rules by general reference, rather than by reference to a specific rule granting authority to decide what is arbitrable, "clearly and unmistakably" supplants a court's statutory power to decide what is arbitrable.  Adopting the reasoning of the Second District in *Natt*, we hold that on the facts of this case, the general reference to "AAA rules" did not "clearly and unmistakably" supplant the trial court's authority to decide what is arbitrable.  We also take this opportunity to explain the limits of our opinion in *Younessi*.

In *Younessi*, the issue we confronted was the propriety of a trial court order directing the parties to select an arbitrator.  *Younessi*, 88 So. 3d at 365.  The appellant contended that the trial court improperly ignored the provision of the arbitration agreement that specifically stated that arbitration would be in accordance with AAA rules.  *Id.*  In a brief opinion without a lot of factual detail, we reversed the trial court's order directing the parties to select an arbitrator because the arbitration agreement stated arbitration would be conducted in accordance with AAA rules, and the AAA rules had a procedure for selecting the arbitrator.  *Id.* at 366.  Significantly, we said: "Where language of the contract clearly indicates that AAA rules govern, they are expressly incorporated into the contract," citing to *Terminix International Co., LP v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327, 1333 (11th Cir. 2005), as authority.  *Id.* at 365.  The citation to *Terminix* in *Younessi* is important to our decision in this case because in *Terminix*, the arbitration agreement stated that "arbitration shall be conducted in accordance with the Commercial Arbitration Rules then in force of the American Arbitration Association."  432 F.3d at 1332.  The specific reference to "the Commercial Arbitration Rules" was important in *Terminix* because those rules contained "Rule 8(a)," which provided that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."  *Id.* (citation omitted).

In *Reunion West Development Partners, LLLP v. Guimaraes*, 221 So. 3d 1278 (Fla. 5th DCA 2017), the Fifth District confronted a home purchase agreement with an arbitration provision that provided arbitration would

be conducted "in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association ('AAA')," which the Fifth District noted had a "Jurisdiction" provision authorizing the arbitrator to rule on whether a dispute is within the scope of an arbitration agreement. *Id.* at 1279. The buyers "argued that the arbitration clause was not enforceable because there was no meeting of the minds and because its terms were unconscionable, citing to *Basulto v. Hialeah Automotive*, 141 So. 3d 1145 (Fla. 2014)." *Id.* at 1279-80. The seller cited *Glasswall, LLC v. Monadnock Construction, Inc.*, 187 So. 3d 248 (Fla. 3d DCA 2016), and "asserted that the issue of arbitrability was expressly reserved for the arbitrator to decide." *Id.* at 1280.

Citing *Younessi* and *Terminix*, the Fifth District concluded that "[w]here, like here, the language of the contract clearly states that AAA rules govern, then said rules are expressly incorporated into the contract." *Id.* Due to the specific reference to and applicability of the AAA Construction Industry Arbitration Rules, the Fifth District reversed the denial of the motion to compel arbitration and remanded for further proceedings. *Id.* Significant to our disposition in this case, the Fifth District distinguished the applicability of *Basulto* for three reasons, one of which was the fact that the arbitration provision in *Basulto* "did not incorporate the Construction Industry Arbitration Rules." *Id.* It appears that the Fifth District in *Guimares* required more than a general reference to "AAA rules," and instead relied on a reference to a specific subset of AAA rules as governing arbitration.

It also appears the Third District has agreed that a more specific reference to a subset of AAA rules is sufficient to vest the arbitrator with the authority to decide arbitrability. *See Mia. Marlins, L.P. v. Miami-Dade Cty.*, 276 So. 3d 936, 940 (Fla. 3d DCA 2019) (finding that the arbitrator could determine arbitrability because the arbitration agreement stated arbitration would be conducted in accordance with the AAA Commercial Arbitration Rules); *Glasswall*, 187 So. 3d at 251 (same, due to reference to AAA Construction Industry Arbitration Rules).

As discussed above, in this case, the arbitration agreement was one paragraph stating merely that "the AAA rules and procedure shall apply." There was no reference to any subset of the AAA rules. Like the Second District, we conclude that "the reference to the AAA Rules was broad, nonspecific, and cursory." *Natt,* 299 So. 3d at 606. The AAA rules were not attached and no information was given as to where to find the rules. *Id.* Additionally, we agree that even if we were to assume that a general reference to "AAA rules" was sufficient to show an intent that the trial court's authority *could* be supplanted, there is still the uncertainty of

whether the parties *did* intend to supplant the trial court's authority. We also agree with our sister court that AAA Commercial Arbitration Rule R-7. language stating that the arbitrator "shall have the power" does not grant *exclusive* authority to the arbitrator. As the Second District has pointed out, "in most interpretive contexts, the statement, 'shall have the power,' does not even constitute a mandatory directive." *Id.* at 607. Most importantly, we agree with the Second District that it is questionable whether the opinions by the Third and Fifth Districts and our own opinion in *Younessi* comports with the Supreme Court's decisions in *First Options* and *Henry Schein.* We also point out that *Younessi*, unlike *Miami Marlins*, *Guimares*, and *Glasswall*, involved applying AAA rules to selecting an arbitrator, and did not address the issue of "who decides" what is arbitrable. It is unknown how a panel of this Court would have ruled if the issue in *Younessi* was "who decides," as between the trial court and an arbitrator.

We conclude that the general reference to the "AAA rules" in this case left ambiguity as to whether the arbitrator has authority to decide arbitrability to the exclusion of the trial court.

In that regard, we also distinguish our position from the Second District. As the dissent in *Natt* points out, the majority opinion seems to indicate that an arbitrator will have authority to decide arbitrability only if the contract language gives the arbitrator *exclusive* authority. *Natt*, 299 So. 3d at 612 (Villanti, J., dissenting) ("Here, the majority has created a <u>new</u> requirement that the contract must confer an 'exclusive' power upon the arbitrator or arbitration panel to determine the arbitrability of an issue."). As we see it, there can be instances, depending on the language of the arbitration agreement, in which the court and the arbitrator or arbitration panel can have *concurrent* jurisdiction to decide arbitrability. As such, we conclude that the trial judge's order in this case properly made a preliminary decision as to which counts of the complaint are covered by the arbitration agreement, based on a limited showing of the facts in this multiple count, factually complex case, and properly left the final decision as to what was arbitrable to the arbitrator. On the facts of this case, we hold that such an approach is an efficient and economical manner to decide the multitudinous disputes in this case and does not violate the contract to arbitrate.

We also certify conflict with the decisions rendered by the Third District in *Miami Marlins* and *Glasswall,* and the Fifth District in *Guimaraes.*

*Affirmed; Conflict Certified.*

9

CIKLIN, J., concurs.
DAMOORGIAN, J., dissents with opinion.

DAMOORGIAN, J., dissenting.

I dissent because the majority opinion directly conflicts with the precedent of this Court in *Younessi v. Recovery Racing, LLC*, 88 So. 3d 364 (Fla. 4th DCA 2012). Our holding in *Younessi* could not have been clearer: "Where language of the contract clearly indicates that AAA rules govern, they are expressly incorporated into the contract." 88 So. 3d at 365 (holding that even though the contract's arbitration clause did not specify how the arbitrator was to be selected, "[t]he contract expressly stated that any dispute arising from it was to be arbitrated under AAA rules;" thus, as AAA rules had an established procedure for selecting an arbitrator, "AAA rules for the selection of an arbitrator should have been followed"); *see also Reunion W. Dev. Partners, LLLP v. Guimaraes*, 221 So. 3d 1278, 1280 (Fla. 5th DCA 2017) ("Where, like here, the language of the contract clearly states that AAA rules govern, then said rules are expressly incorporated into the contract."); *Glasswall, LLC v. Monadnock Constr., Inc.*, 187 So. 3d 248, 251 (Fla. 3d DCA 2016) (recognizing that "the majority of federal courts considering similar circumstances where the AAA's arbitration rules have been incorporated by reference into a contract likewise have found that the parties sufficiently evidenced their intent to have arbitrators, not a court, hear and decide issues of arbitrability").

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***